# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MELODY ROSE JONES,**

      Movant,

      v.

**UNITED STATES OF AMERICA,**

      Respondent.

CASE NO. 2:19-CV-147
CRIM. NO. 2:16-CR-00166
**JUDGE MICHAEL H. WATSON**
Chief Magistrate Judge Elizabeth P. Deavers

## ORDER and
## REPORT AND RECOMMENDATION

Movant, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255. This matter is before the Court on the Motion to Vacate, Respondent's Response in Opposition, Movant's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that the Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 79) be **DENIED** and that the action be **DISMISSED**.

Movant's Motion to Appoint Counsel (ECF No. 80) is **DENIED.**

**Facts and Procedural History**

On August 23, 2016, Movant was charged in a thirteen-count Indictment relating to her perpetration of a tax fraud scheme, in violation of 18 U.S.C. § 2, 18 U.S.C. § 371, 18 U.S.C. § 641, and 18 U.S.C. § 1028A, with a forfeiture provision under 18 U.S.C. § 982(a)(1), (a)(2). (ECF No. 1.) On August 26, 2016, Attorney Steven S. Nolder filed a Notice of Appearance as defense counsel. (ECF No. 6.) On September 13, 2016, Attorney Joseph R. Landusky, II, filed a Notice of Substitution of Counsel, relieving Attorney Nolder as from his representation as defense counsel. (ECF No. 23.) However, on May 30, 2017, Attorney Landusky filed a Motion to Withdraw, (ECF No. 41), and Attorney Nolder re-entered his appearance by filing a Notice of

Substitution of Counsel indicating that Movant had retained him to again represent her as defense counsel. (ECF No. 42.) Thereafter, on May 31, 2017, Movant pleaded guilty pursuant to the terms of the Superseding Plea Agreement to Counts 2 and 11 of the Indictment, charging her with theft or conversion to her own use of money or property of the United States, in violation of 18 U.S.C. § 641, and knowing use without authority of a means of identification of another person in relation to a felony violation of 18 U.S.C. § 641, in violation of 18 U.S.C. § 1028A. She also agreed to forfeit any property derived or obtained as a result of those charges. (ECF No. 45, PAGEID # 124-25.) On March 21, 2018, the Court imposed an aggregate term of 48 months imprisonment, to be followed by three years supervised release, plus restitution in the amount of $3,234,590. (ECF No. 68, 70.) Movant did not file an appeal.

On January 15, 2019, Movant filed this Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 79.) She complains that Attorney Landusky performed in a constitutionally ineffective manner causing her prejudice, and asserts that, as a result, her guilty plea was not knowing, intelligent or voluntary. It is the position of the Respondent that this action should be dismissed because Movant has failed to provide a cognizable claim for relief.

**Motion to Appoint Counsel**

Movant has filed a request for the appointment of counsel. (ECF No. 80.)

The United States Supreme Court has held that a prisoners' post-conviction right to counsel extends only to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions and we decline to so hold today."). Habeas proceedings are considered to be civil in nature, and a Movant has no constitutional right to counsel in habeas corpus proceedings. *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005)

2

(citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Rather, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2) and § 3006A(a)(2)(B). "The decision to appoint counsel for a federal habeas Movant is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (citations omitted). The appointment of counsel is mandatory only where the record indicates that an evidentiary hearing is required to resolve a Movant's claims. *See* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts. In assessing whether to exercise its discretion in appointing counsel on a Movant's behalf, the Court should consider "the legal and factual complexity of the case, the Movant's ability to investigate and present his claims, and any other relevant factors." *Matthews v. Jones*, No. 5:13-cv-1850, 2015 WL 545752, at *3 (N.D. Ohio Jan. 22, 2015) (citations omitted). "Where the issues involved can be properly resolved on the basis of the . . . record, a district court does not abuse its discretion in denying a request for court-appointed counsel." *Poulton v. Warden, Ross Corr. Inst.*, No. 2:15-CV-02352, 2018 WL 527286, at * 6 (S.D. Ohio Jan. 24, 2018) (citations omitted).

Here, no evidentiary hearing will be required to resolve Movant's claims. Moreover, the record does not reflect that the case is so unduly complex that the interests of justice or due process require the appointment of counsel to assist the Movant's behalf. Further, the record reflects that to date, Movant has more than adequately presented her arguments on her own behalf. Accordingly, the request for appointment of counsel (ECF No. 80) is **DENIED.**

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a party must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal court imposed a sentence in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995) (unpublished)). Further, if a Movant fails to raise a non-constitutional claim at trial or on direct appeal, he or she has waived the matters for collateral review except where the errors amount to something akin to a denial of due process. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the Movant shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

**Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a Movant claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A Movant "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a Movant "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 547 F. App'x at 754 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Because a criminal defendant waives numerous constitutional rights when she pleads guilty, the guilty plea must be entered knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action

open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  In applying this standard, a court must look at the totality of the circumstances surrounding the plea.  *Id*.  A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness.  *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  Further, a criminal defendant cannot successfully challenge the voluntariness of her plea merely on the basis that she was motivated to plead guilty.  *Brady v. United States*, 397 U.S. 742, 750 (1970).

However, a Movant may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary.  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).  *Strickland's* two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).  In order to obtain relief on that basis, however, a Movant raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases.  *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.  Movant has failed to meet this standard here.

**Application**

Movant asserts that Attorney Landusky failed to review or investigate discovery material, and failed to adequately explain the provisions of her initial Plea Agreement.  Specifically, she complains that he failed to provide her with a copy of the discovery material, witness statements

or research on the case. (*Motion to Vacate*, ECF No. 79, PAGEID # 315.) She states that Landusky incorrectly told her that she would not be required to forfeit her home, and he improperly failed to disclose e-mails he had exchanged with the prosecutor. (*Reply,* ECF No. 89, PAGEID # 466.) Movant states that, only hours before her sentencing hearing, she learned that she would be required to forfeit her residential property which, she contends was unrelated to the criminal activity charged. (PAGEID # 468-69.) She later agreed to the forfeiture of that property only under extreme duress, and after being told by the prosecutor that her failure to agree to the forfeiture of this property could have serious sentencing ramifications. (PAGEID # 470; Motion to Vacate, ECF No. 79, PAGEID # 316.) Movant claims that, but for Attorney Landusky's inadequate performance, she would have obtained more favorable sentencing terms. (Reply, ECF No. 89, PAGEID # 472.) She asserts that her guilty plea was not knowing, intelligent or voluntary, as she did not understand the nature of the charges or consequences of her guilty plea, because Attorney Landusky gave her only 48 hours to review, sign and return it. When she asked questions about certain provisions of the Plea Agreement, he told her that it could be changed later, or was standard, or "Washington wouldn't allow it." (*Motion to Vacate*, ECF No. 89, PAGEID # 316.) Movant also alleges that Attorney Landusky promised that she would serve no jail time. Movant requests that the Court impose concurrent terms of incarceration on Counts 2 and 11 in view of mitigating factors. (ECF No. 89, PAGEID # 477-78.) She has attached a copy of an e-mail from the prosecutor, Dan Brown, to Attorney Landusky (PAGEID # 482);[1] a copy of Landusky's Statement of Services Rendered (PAGEID #

---

[1] That document indicates that, on May 25, 2017, the prosecutor e-mailed Attorney Landuscky as follows:

> We checked Zillow last night and it showed that the real estate was listed at $638,000, and it also indicated the sale status as "pending."

7

483-84); and what appears to be a copy of her fee agreement with Landusky (PAGEID # 486-87), in support of her claims.

In response, Respondent has submitted the *Affidavit of Joseph R. Landusky II*, Movant's former defense counsel, which indicates in relevant part as follows:

> In September 2016, Melody R. Jones contacted my office. She told me that she was extremely unhappy with her lawyer, Steve Nolder. She told me that she was looking around for a different lawyer. She explained that she believed an effective defense should yield no prison time. I explained to her that I could not guarantee any specific results. I reviewed the indictment which accused Ms. Jones of being the chief organizer in a scheme to defraud the federal government out of millions of tax dollars. Ultimately, we reached an agreement that I would substitute for her present counsel, Mr. Nolder.
>
> After I was retained by Ms. Jones, I obtained discovery from the Assistant United States Attorney Dan Brown. Mr. Brown provided me with a DVR containing voluminous evidence. My assistant copied that DVR and sent it to Ms. Jones. According to my review of approximately 5000 pages of discovery contained on the DVR, Ms. Jones and her co-defendants were involved in filing at least 935 separate fraudulent taxpayer claims with the IRS. I spent numerous hours reviewing the discovery provided by the government. It is important to note that, in accordance with the Jencks Act, 18 U.S.C. § 3500, the discovery did not contain any statements made by government witnesses.
>
> Ms. Jones resided in California, so much of my communication with her was by email and telephone conferences. Because we had agreed to a flat fee arrangement, I did not record all of my conferences with Ms. Jones. Nevertheless, my records show that I had at least 20 communications by phone, email and in-person with Ms. Jones.

---

> If your client agrees that the sale will be an arm's length transaction at fair market value, provides us with the HUD-1 documents and places her net proceeds with the Clerk of the Court to be forfeited and/or applied directly to her restitution debt, we don't have any objection to her selling the house. If it sells relatively quickly, it will certainly preserve the equity and save a lot of time and money on our side.
>
> Another thing: Ms Jones sold rental property earlier this year for $150,000, free and clear. What happened with those proceeds?

(ECF No. 89, PAGEID # 482.)

. . . I sent her a letter by email along with a proposed plea agreement from the government on April 10, 2017. . . . The proposed plea agreement provides that Ms. Jones would plead guilty to count II – theft and Count XI – Aggravated Identity Theft with all other counts being dismissed. That letter provides guideline calculations explaining to her that if she went to trial and lost on just count II and count XI, she would be looking at an advisory guideline sentence of 97-121 months for Theft which would be served consecutively to a 2-year term for Aggravated Identity Theft. The letter further explained that if she pleads she would be looking at a sentence of 78-87 months for Theft which would be served consecutively to a 2-year term for Aggravated Identity Theft. I had further discussions with Ms. Jones explaining that we had worked out an 11(c)(1)(C) plea agreement with an agreed sentence of 54 months which is significantly less than the advisory guideline sentence and mandatory consecutive 2-year sentence.

Ms. Jones states that I told her to sign and return plea agreement within 48 hours. That is not correct because I sent her the plea agreement on April 7, 2017 with the guideline letter. She signed it on April 20, 2017. It was returned to me and I signed it on May 1, 2017. At no time did I tell her the plea agreement could be changed later. I did tell her that the plea agreement contained standard provisions. I explained to her that the judge could accept or reject the plea agreement because the judge has the ultimate say as to the sentence imposed. I never told Ms. Jones that probation was a possibility because I thoroughly explained to her that she had to spend at least 20years in jail due to the aggravated Identity Theft charge. I told Ms. Jones that the government would not drop any right to forfeiture regarding any property or proceeds she obtained as a result of her Theft offense.

Ms. Jones states that I exchanged emails with AUSA Brown without her knowledge. My records indicate that on May 24, 2017, AUSA Brown sent me an email concerning an allegation that Ms. Jones was trying to sell her house in California which was subject to forfeiture as representing proceeds of illegal activity. That same day I had a couple of telephone conferences with Ms. Jones regarding the purported sale of her house. I attempted to explain the consequences of selling property that was subject to forfeiture but she became irate and stated it was her property – not the government's and she would sell it if she wished. I subsequently left a message with AUSA Brown to follow upon Ms. Jones' concerns. The following day, AUSA Brown sent an email telling me the house was listed at $638,000.00 and suggested that she apply the net proceeds to her forfeiture/restitution debt. He further indicated that she previously sold a different property in 2017 for $150,000.00 free and clear. I called Ms. Jones and read AUSA Brown's email to her verbatim. She became enraged and accused me of working for the government. She also told me that she wanted to consider her options about me continuing to represent her.

Over Memorial Day weekend 2017 Ms. Jones told me I was fired. I withdrew on 30 May 2017. She rehired Mr. Nolder who entered his appearance the same day. She entered a plea negotiated by Mr. Nolder on May 31, 2017. About a week later,

> I received a letter from Ms. Jones requesting an accounting of work completed. On June 29, 2017, I sent her a statement of services rendered.
>
> In September 2017, Ms. Jones filed a complaint with the Columbus Bar Association complaining about my representation of her. . . . The Columbus Bar Association determined that Ms. Jones' complaint was unfounded.

*Affidavit of Joseph R. Landusky II*, ECF No. 88-1, PAGEID # 459-61.

The record indicates that, while represented by Attorney Landusky, on April 20, 2017, Movant signed a *Plea Agreement*. (ECF No. 39.) As discussed, Attorney Landusky thereafter withdrew as counsel, and Attorney Nolder filed a Notice of Substitution of Counsel. (ECF Nos. 41, 42.) Represented by Attorney Nolder, who had previously acted as defense counsel, on May 31, 2017, Movant signed the Superseding Plea Agreement, the terms under which she entered her guilty plea. (ECF No. 45.) She signed her agreement to the following Statement of Facts:

> In 2009 Defendant Melody Rose Jones began to create and file false, fictitious and fraudulent income tax returns for, or in the names of, other persons in order to seek substantial tax refunds from the Internal Revenue Service (IRS). She recruited others to seek the personal identification information ("PII") of other persons, typically low-income or unemployed individuals, and offered to pay her recruits $800 for each adult's PII and $1,000 for each child's PII. Accordingly, Defendant JONES established a network of recruits who provided such PII which she then used to create fraudulent tax returns, typically falsely alleging receipt of income, usually as a household worker, claiming false credits, such as the Earned Income Credit as well as child care and education expense. Most of the fraudulent returns were filed electronically with refunds directed to bank accounts controlled by JONES and certain of her recruits.
>
> More specifically, on or about January 23, 2012, Defendant MELODY ROSE JONES knowingly and willfully created and filed with the IRS a false and fraudulent income tax return using without lawful authority the PII of one L.C. in order to convert to her own use and the use of others a tax refund in the amount of $4,110. This activity took place in the Southern District of Ohio. In all, Defendant JONES, through this illegal activity over several years, is responsible for losses to the Internal Revenue Service of $4,741,521.

(ECF No. 45, PAGEID # 127.) Movant signed the statement of facts, acknowledging that it is true and correct, and indicating that she had read and carefully reviewed it with her attorney. (*Id*.) She also indicated that she had read and carefully reviewed the Superseding Plea Agreement with her attorney, that she understood it, voluntarily agreed to it, and did not wish to change any part of it. She stated that she was "completely satisfied" with the representation of counsel. (PAGEID # 128.)

The transcript of Movant's May 31, 2017, guilty plea hearing indicates that, at that time, she stated that she had discussed the Indictment and the Superseding Plea Agreement with Attorney Nodler, as well as her potential defenses, and that she was completely satisfied with his advice, representation, and counsel. (Transcript, ECF No. 84, PAGEID # 335-36.) The prosecutor summarized the terms of the Superseding Plea Agreement, indicating that Movant had agreed to plead guilty to Counts 2 and 11, and understood that she faced ten years on Count 2, and two years on Count 11, such sentence to be served consecutively to any sentence imposed on Count 2. (PAGEID # 337.) She agreed that she was responsible for a tax loss of between $3.5 and $9.5 million, corresponding to an offense level 24 under the advisory United States Sentencing Guidelines. (PAGEID # 338.) She would obtain a three-level reduction in her recommended Guideline sentence for her acceptance of responsibility; and she agreed to pay restitution to the IRS in the amount of $4,741.521. (*Id*.) She signed a forfeiture agreement agreeing to forfeit all right and interest in her property derived from the charges and waived her right to appeal unless the sentence imposed exceeded the statutory maximum, and except as to a claim of prosecutorial misconduct or the denial of the effective assistance of counsel. (PAGEID # 339.) Movant stated that she had read the terms of the Superseding Plea Agreement, and that her attorney had satisfactorily answered all her questions. She had signed it, understood it, and

11

the attached statement of facts were "entirely accurate" with respect to her involvement in the charges. (PAGEID # 340.) She denied being threatened by any agent of the government or anyone else. (PAGEID # 341.) The Court advised her that she faced up to 12 years in prison. The Court advised her of all of the rights that she was waiving by entry of her guilty plea. Movant at all times indicated that she understood and she asked no questions. (PAGEID # 342-44.) She admitted her guilt. (PAGEID # 345.)

On March 21, 2018, Movant signed a Consent Order of Forfeiture (ECF No. 69), agreeing to the forfeiture of $3,234,590.00, and certain real property located at 6878 Tourmaline Drive, Eastvale, Riverside, County, California. She had a recommended Guideline sentence of 57 to 71 months incarceration. (Sentencing Transcript, ECF No. 86, PAGEID # 390.) The prosecutor requested imposition of 54 months, plus an additional 24 month consecutive term of incarceration, as provided for under the terms of the initial Plea Agreement. (PAGEID # 398.) Movant expressed her remorse. (PAGEID # 402-03.) The Court deviated downward under U.S.S.G. § 5H1.6,[2] reducing Movant's total offense level from 25 to 16, corresponding to a

---

[2] U.S.S.G. § 5H1.6 provides:

> In sentencing a defendant convicted of an offense other than an offense described in the following paragraph, family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.
>
> In sentencing a defendant convicted of an offense involving a minor victim under section 1201, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code, family ties and responsibilities and community ties are not relevant in determining whether a sentence should be below the applicable guideline range.
>
> Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine.

recommended Guideline sentence of 21 to 27 months incarceration, and imposed an aggregate term of 48 months imprisonment. (PAGEID # 411-12.)

Movant does not allege, and the record does not indicate, that but for her attorney's inadequate performance she would not have pleaded guilty, and would have proceeded to trial. Moreover, and contrary to her allegations here, nothing in the record supports her claim that she could have obtained a lesser sentence or a more favorable plea agreement but for the inadequate performance of her Attorney Landusky, who did not represent her at the time of her guilty plea and sentencing. Moreover, because Movant obtained representation by new counsel with whom she had expressed her satisfaction prior to and at the time she entered her guilty plea and thereafter agreed to the forfeiture of the property at issue as involving proceeds of the criminal charges against her, she cannot now obtain relief on her claim that she was denied the effective assistance of counsel during the time that she was represented by a prior attorney who had no involvement in the final disposition of the case. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)).

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson*, 397 U.S. at 771].

*Tollett v. Henderson*, 411 U.S. at 267. Also,

> [p]re-plea claims of ineffective assistance of trial counsel are considered nonjurisdictional defects that are waived by a guilty plea. *See United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001); *see also Siebert v. Jackson*, 205 F. Supp. 2d 727, 733–34 (E.D. Mich. 2002) (holding that a habeas Movant's claims of deprivations of his constitutional rights that occurred before his guilty plea, as a result of his trial counsel's alleged ineffective assistance, were foreclosed by his guilty plea, where he stated at the plea hearing that he was satisfied with counsel's representation, and he did not complain of counsel's advice concerning plea agreement). The Movant's pre-plea claims of ineffective assistance of trial counsel have been waived by his guilty plea.

*Danner v. Booker*, No. 10-11434, 2014 WL 3525071, at *8 (E.D. Mich. July 16, 2014). "The only challenges that a federal habeas corpus Movant may make after he has entered a guilty plea concern the nature of his counsel's advice to plead and the nature of his plea as voluntary and intelligent." *Smith v. Warden, Noble Correctional Inst.*, No. 2:17-cv-735, 2018 WL 4077457, at *4 (S.D. Ohio Aug. 27, 2018) (quoting *Woodhouse v. Sandusky Cty. Common Pleas Court*, No. 3:05-cv-2934, 2007 WL 5234144, at *6 (N.D. Ohio Jan. 9, 2007)) (internal citations omitted).

Additionally, the record does not support Movant's allegation now that her guilty plea was coerced, that she did not understand the terms of her negotiated Superseding Plea Agreement or sentencing ramifications, or that her guilty plea was otherwise not knowing, intelligent, or voluntary.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea proceeding], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–75 (1977). "Because courts must be able to rely on a defendant's statements during a plea colloquy, 'allegations in a § 2255 motion that directly contradict the Movant's sworn statements made during a properly conducted Rule 11 colloquy

14

are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Ross*, No. 1:11-cr-00139, 2019 WL 144387, at *3 (S.D. Ohio Jan. 9, 2019) (citing *Francis v. United States*, No. 1:15-0010, 2015 WL 5566296, at *2, (M.D. Tenn. Sep. 21, 2015) (citing *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)). Movant indicated that she had read the agreement, understood it, discussed it with her attorney, admitted her guilt, and agreed to the forfeiture of property. That being the case, she cannot now obtain relief on her complaint regarding the representation of prior counsel.

Movant's claims are without merit.

**Motion for Reduction of Sentence**

Movant has filed a request that the Court reduce her sentence and run Counts 2 and 11 concurrently to each other. (ECF No. 89.) In support, she states that she has received no disciplinary infractions while in prison, is pursuing educational programming, has complied with all of the terms of her Superseding Plea Agreement, and that she has been diagnosed with breast cancer. (ECF No. 89, PAGEID # 477-78.)

However, under the provisions of 18 U.S.C. § 3582(c), a court may not modify a term of imprisonment once it has been imposed except where the Bureau of Prisons has requested the modification based upon extraordinary circumstances, where modification is permitted under Fed. R. Crim. P. 35, or where the guideline sentencing range for the offense of conviction has been retroactively lowered. None of the foregoing circumstances are applicable here. Moreover, Movant's conviction on Count 11 must be served consecutively to her sentence on Count 2. *See* 18 U.S.C. § 1028A(a)(1), (b). Therefore, this Court does not have the authority to modify Movant's sentence.

**Recommended Disposition**

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 79) be **DENIED** and that this action be **DISMISSED**.

Movant's *Motion to Appoint Counsel* (ECF No. 80) is **DENIED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

                                            _s/ *Elizabeth A. Preston Deavers*_
                                            Elizabeth A. Preston Deavers
                                            Chief United States Magistrate Judge